**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10   VARIAN H. WILLIS,

11          Plaintiff,                                    No. C 02-3670 JSW

12     v.

13   JO ANN B. BARNHART,                                  **ORDER GRANTING PLAINTIFF'S
     Commissioner of Social Security Administration,      MOTION FOR SUBSTITUTION,**
14                                                        **DENYING PLAINTIFF'S MOTION
                                                           FOR SUMMARY JUDGMENT,**
15          Defendant.                                    **AND GRANTING DEFENDANT'S
                                                           CROSS-MOTION FOR**
16   _____/           **SUMMARY JUDGMENT**

17

18          Now before the Court are the Motion for Substitution and Motion for Summary Judgment

19   filed by David B. Willis ("Mr. Willis"), the executor of Plaintiff Varian Willis' estate, and the Cross-

20   Motion for Summary Judgment filed by Commissioner of the Social Security Administration's

21   ("Commissioner").  Pursuant to Civil Local Rule 16-5, the cross-motions have been submitted on the

22   papers without oral argument.  The Court vacated the hearing on Plaintiff's motion for substitution,

23   finding it suitable for disposition without oral argument.

24          Having carefully reviewed the administrative record, the parties' papers, and the relevant legal

25   authority, the Court hereby GRANTS the Motion for Substitution, DENIES Mr. Willis' Motion for

26   Summary Judgment, and GRANTS the Commissioner's Cross-Motion for Summary Judgment.

27

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Varian H. Willis ("Ms. Willis"), now deceased, brought this action pursuant to 42 U.S.C.

§ 405(g) to obtain judicial review of a final decision of the Commissioner denying her request for

disability insurance benefits under Title II of the Social Security Act.

Mr. Willis argues on summary judgment that the ALJ erred in his conclusion because: (1) the

ALJ's finding of Ms. Willis' date last insured ("DLI") is not supported by substantial evidence; and (2)

the ALJ's finding that Ms. Willis did not establish the existence of a severe impairment is based on

legal error.

### A.      Procedural History

On August 9, 2000, Ms. Willis applied for Disability Insurance benefits, claiming a disabling

medical condition as of September 30, 1999.  (Certified Administrative Transcript ("Tr.") at 90.)  Ms.

Willis' initial application and her reconsideration applications were denied, and she timely filed a

request for a hearing.  (Tr. at 55-60, 64-69.)  An Administrative Law Judge ("ALJ") conducted a

hearing on October 10, 2001.  (Tr. at 17-54.)  Ms. Willis, represented by attorney Donald Seth,

appeared and testified at the hearing.  (Tr. at 30-47.)  Robert Rashke, a vocational expert, also

appeared and testified at the hearing.  (Tr. at 48-52.)

On November 30, 2001, the ALJ determined that Ms. Willis was not entitled to a period of

disability and disability insurance benefits according to the Social Security Act ("SSA").  (Tr. 12-16.)

On January 4, 2002, Ms. Willis requested a review of the ALJ's unfavorable decision.  (Tr. at 7.)  The

Appeals Council denied review of the ALJ's decision on May 31, 2002.  (Tr. at 3-4.)

On July 29, 2002, having exhausted her  administrative remedies, Ms. Willis commenced this

action for judicial review of the ALJ's decision.  This Court granted Ms. Willis three extensions to

properly file a Motion for Summary Judgment.  (Docket Nos. 14, 15, 17.)

Ms. Willis died on January 25, 2003, before resolution of this matter.  David B. Willis ("Mr.

Willis"), Ms. Willis' husband, Executor of her will, and Trustee for the Estate of David B. and Varian

H. Willis, seeks to pursue this action on behalf of his deceased wife.  Pursuant to the Court's Order,

Mr. Willis filed a Motion for Summary Judgment on January 30, 2004.

1       On March 2, 2004, the Commissioner filed a Cross Motion for Summary Judgment arguing

2   that Mr. Willis lacked standing to bring this suit, and further argued that the ALJ's decision was

3   supported by substantial evidence and free of legal error.  Mr. Willis subsequently filed a Motion for

4   Substitution of Plaintiff on March 17, 2004, pursuant to Federal Rule of Civil Procedure 25(a)(1).

5       **B.      Factual Background**

6       Ms. Willis was born June 22, 1941, and was, therefore, fifty-nine years old when she filed for

7   Disability Insurance benefits and sixty years old at the time of the hearing before the ALJ.  (Tr. at 90.)

8   Ms. Willis "had fourteen years of education, and also had hotel and restaurant management training,

9   and retail clerk/grocery checker and floral apprenticeships."  (Tr. 13; *see also id.* at 103.)  Ms. Willis'

10  past relevant work includes employment as a caterer, bagger, courtesy clerk, shop assistant, and

11  florist.  (*Id.* at 13, 98.)  Ms. Willis also owned and operated a catering business and floral shop.  (*Id.*

12  at 98, 116-120.)[1]

13      Ms. Willis alleged that she was disabled and unable to work due to back problems, mental

14  problems, alcoholism, and high blood pressure.  (Tr. at 57, 65.)  During the hearing before the ALJ,

15  Ms. Willis stated that she last worked on August 30, 1999.  (Tr. at 22.)  Ms. Willis also stated in her

16  disability report that she operated her Florist shop "through most of September 1999," and operated

17  the shop partially during October 1999.  (Tr. at 110.)  Similarly, the record shows varying dates for

18  which Ms. Willis was last insured for disability insurance purposes.  (Tr. at 57, 65, 93.)  Ms. Willis,

19  however, acknowledged that she reviewed her earnings record and that those records appeared

20  correct as posted.  (Tr. at 92.)

21      Ms. Willis' medical history demonstrates the following.  In 1979, Ms. Willis underwent a

22  vaginal hysterectomy and quadrantectomy, suffering from uterine fibroids and fibrocystic disease in her

23  left breast.  (Tr. at 153-59.)  On March 10, 1993, Dr. Edington, an orthopedic surgeon, diagnosed

24  Ms. Willis with degenerative arthritis of the lumbar spine with a superimposed lumbosacral strain and

25  concluded that Ms. Willis had a residual disability to the back, which precluded lifting over 25 pounds.

26  (Tr. at 324-55.)

27

28      [1]      There are conflicting dates with respect to her employment in the various work histories
    submitted by Ms. Willis.  (*See, e.g.,* Tr. at 98 and Tr. at 116-120.)

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Dr. Ekren, an examining neurosurgeon, reported in August 1994 that it would probably not be

2    a problem for Ms. Willis to lift up to twenty-five pounds.  (Tr. at 356.)  Discharge diagnoses dated

3    October 25, 2004, from St. Helena hospital stated that Ms. Willis suffered from alcohol dependency.

4    (Tr. at 160-70.)  A chest X-ray in May 1999 revealed that Ms. Willis had no acute pulmonary

5    process and a mammogram in May 1999 showed two stable nodules in her right breast.  (Tr. at 177-

6    80.)

7    On June 23, 2000, Dr. Price, an examining cardiologist, reported that Ms. Willis had

8    adequately controlled essential hypertension and a history of alcoholism.  (Tr. at 218.)  On June 29,

9    2000, Dr. Kirk, an examining psychiatrist, reported diagnoses of situational anxiety, dystheymic

10   disorder, depression, substance abuse, alcohol in recovery, and hypertension.  (Tr. at 223.)   On

11   September 7, 2000, Dr. Olness, Ms. Willis' treating physician, retrospectively reported that Ms. Willis

12   was disabled as of September 1, 1999, as a result of depression, anxiety, and hypertension.  (Tr. at

13   249.)[2]

14   On November 15, 2000 and January 4, 2001, disability determination services ("DDS")

15   medical consultants concluded that there was insufficient evidence to establish a disability prior to Ms.

16   Willis' date last insured ("DLI").  (Tr. at 228, 268-69.)  These reports indicate a DLI of September

17   1999.

18   In January 2001, records show that Wilcox Memorial Hospital admitted Ms. Willis for chronic

19   obstructive pulmonary disease ("COPD") and anxiety on two occasions.  (Tr. at 270, 295.)  In April

20   2001, records show that Dr. Olness limited Ms. Willis to standing or walking for a total of thirty

21   minutes in an eight hour day, with no restrictions on sitting, due to shortness of breath, COPD, and

22   congestive heart failure.  (Tr. at 318-19.)  Dr. Kirk stated in April 2001 that Ms. Willis' condition

23   impaired her ability to interact with people and deal with work stresses.  (Tr. at 321-23.)  In

24   September 2001, Dr. Kirk reported that based on Ms. Willis' depression, anxiety and alcohol

25   recovery, Ms. Willis would have significant physical and psychiatric limitations and offered his opinion

26   that she was disabled on those grounds.  (Tr. at 366.)  On October 3, 2001, Dr. Olness concluded

27

28   [2]    This assessment was included in Ms. Willis' application for Employee Disability Benefits
dated September 7, 2000, in which she stated her disability began on December 15, 1991, and asked that her claim
begin on September 1, 1999.  (Tr. at 246.)

**United States District Court**

For the Northern District of California

1   that due to Ms. Willis' many chronic conditions, she was permanently disabled and unable to return to

2   the workforce.  (Tr. at 364.)

3       Based on the medical evidence above, the ALJ found that Ms. Willis did not suffer from a

4   severe impairment on or before September 30, 1999.  (Tr. at 15.)  The ALJ inferred that while the

5   evidence in the record might establish a severe impairment, "that evidence is found in records and

6   reports which post date the date last insured."  (Tr. at 14-15.)  The ALJ also found that Ms. Willis'

7   allegations of inability to work were not fully credible.  (Tr. at 15.)

## II.  ANALYSIS

### A.       David B. Willis' Motion for Substitution for Varian H. Willis Is Granted.

10      The Commissioner submits that Mr. Willis did not file a Motion for Substitution according to

11  Federal Rule of Civil Procedure 25(a)(1), nor provide evidence that he is the executor of Ms. Willis'

12  estate, and therefore does not have standing to proceed in this case.  (Def. Cross-Motion at 3.)  Mr.

13  Willis concedes that a Motion for Substitution was not made at the time he submitted the Motion for

14  Summary Judgment.  (Willis Opp. Br. at 4.)  However, Mr. Willis filed a Motion for Substitution on

15  March 17, 2004.  (Docket No. 26.)[3]

16      Rule 25(a)(1) provides:

17          If a party dies and the claim is not thereby extinguished, the court may
            order substitution of the proper parties.  The motion for substitution may be
18          made by any party or by the successors or representatives of the deceased
            party and, together with the notice of hearing, shall be served on the parties
19          as provided in Rule 5 and upon persons not parties in the manner provided
            in Rule 4 for the service of a summons, and may be served in any judicial
20          district.  Unless the motion for substitution is made not later than 90 days
            after the death is suggested upon the record by service of a statement of the
21          fact of the death as provided herein for the service of the motion, the action
            shall be dismissed as to the deceased party.

22  Fed. R. Civ. P. 25(a)(1).

23      Rule 25(a)(1) thus requires "two affirmative steps in order in order to trigger the running of the

24  ninety-day period": (1) a proper party must formally suggest the death of the party on the record; and

25  (2) the suggesting party must serve other parties with a suggestion of death in the same manner as

26

27

28  _____

    [3]    The Commissioner has not opposed the motion to substitute.  Nor does she suggest that a
letter from Ms. Willis' former counsel was a formal suggestion of death triggering the 90 day period for filing a
motion.  (See Def. Cross-Motion at 3.)

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

required for service of the motion to substitute. *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994.); *see also* 3B Moore's Federal Practice ¶ 25.06[3] (2d ed. 1991) ("a formal suggestion of death is absolutely necessary to trigger the running of the ninety days").

Here, there was no formal suggestion of death made according to Rule 25(a)(1) which triggered the time limitation, and, therefore, Mr. Willis' Motion for Substitution was not barred. *See Saylor v. Bastedo*, 623 F. 2d 230, 237 (2d Cir. 1980) (holding that a Motion for Substitution filed three years after death of the party was not untimely because the time limit began only when the suggestion of death was filed). Further, Mr. Willis submitted a declaration which shows that Willis' Last Will and Testament poured over her Social Security property interest into the David B. Willis and Varian H. Willis Revocable Trust, of which Mr. Willis is the Trustee. (Declaration of David Willis In Support of Motion to Substitute, ¶¶ 1-3, Ex. A.)

Therefore, this Court GRANTS Mr. Willis' Motion for Substitution for the deceased plaintiff, Varian H. Willis.

### B. Standard of Review on Motion for Summary Judgment Regarding Review of Commissioner's Decision To Deny Benefits.

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence. 42 U.S.C. § 405(g); *Sprague v. Bowen,* 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Derosiers v. Sec'y of Health and Human Serv.,* 846 F.2d 573, 576 (9th Cir. 1988). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ's decision must be upheld "where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

### C. The ALJ's Determination That Ms. Willis' Date Last Insured Was September 30, 1999 Is Supported By Substantial Evidence.

**United States District Court**

For the Northern District of California

1    Mr. Willis argues that the ALJ's finding that Willis' DLI was September 30, 1999 was not

2    supported by substantial evidence.[4]  Every person claiming disability benefits under the Act must

3    establish that he or she has insured status and that he or she is disabled.  42 U.S.C. § 423(a)(1)(A),

4    (D).  To have disability insured status, a claimant must earn at least twenty quarters of coverage in the

5    forty quarter period ending with that quarter.  20 C.F.R. § 404.130(b)(2).[5]  The Act provides that the

6    Commissioner's records "shall be evidence . . . of the amount of wages paid to ... an individual and of

7    the periods in which such wages were paid ... ."  42 U.S.C. § 405(c)(3).  The Act further provides a

8    time limitation in which any errors in entries (including the absence of an entry) in the Commissioner's

9    records may be amended.  *Id*. § 405(c)(1)(B).  After the expiration of the time limitation, the

10   Commissioner's records of the "amount of wages paid to . . . an individual during any period in such

11   year shall be conclusive."  *Id*. § 405(c)(4)(A).  Section 405(c)(4)(B) further provides that the absence

12   of an entry in the Commissioner's records as to wages paid to an employee is "presumptive evidence"

13   that no wages were paid during such period.

14   The evidence in the record shows that Ms. Willis had the requisite twenty quarters of coverage

15   only if one starts the calculation from September 30, 1999.  Mr. Willis contends that Ms. Willis'

16   Certified Earnings Report ("CER") incorrectly shows an absence in wages paid in 1991 and

17   improperly categorized her as uninsured for disability insurance purposes as of September 30, 1999.

18   (Pl. Mot. at 6.)   The CER shows that her DLI is September 30, 1999, and Ms. Willis acknowledged

19   that she had reviewed her earnings record and that it appeared correct.  (Tr. at 92-93.)  In support of

20   his argument that the substantial evidence does not support the September 30, 1999 DLI, and that

21

22   [4]    There are admitted discrepancies with respect to Ms. Willis' DLI.  When Ms. Willis' claim was
initially denied in November 2000, the Notice of Disapproved Claims reflects a DLI date of September 30, 2000.
23   (Tr. at 57-60.)  In denying Ms. Willis' request for reconsideration, the Commissioner filed a letter, dated January
10, 2001, which also stated that her DLI was September 30, 1999.  (Tr. at 65-68.)  Testimony at the hearing held on
24   October 10, 2001, reflects that the ALJ and Ms. Willis' counsel were aware of the potential discrepancy in the
DLI.  Although in this action, Mr. Willis asserts Ms. Willis should have been entitled to a DLI of December 31,
25   2001, he provides no support for this calculation.  Moreover, this Court concludes that there was not substantial
evidence to demonstrate that Ms. Willis was entitled to an extra quarter of coverage.  That finding would render
26   any discrepancy in the initial and reconsideration notices with respect to the DLI immaterial, because Ms. Willis
would not have had the requisite 20 of 40 quarters of coverage to support a DLI of September 30, 2000.  (Tr. at
27   95.)

28   [5]    20 C.F.R. § 404.130 provides four different rules for determining if a claimant is insured,
however, the above referenced section is the only applicable section in this matter.

**United States District Court**
For the Northern District of California

1   Ms. Willis is entitled to an extra quarter of coverage, Mr. Willis cites various portions of the record

2   purportedly showing that Ms. Willis worked as a grocery store bagger for twenty-one to twenty-three

3   days beginning in November 1991, until December 15, 1991.  (Pl. Mot. at 6 (citing record).)  There is

4   also evidence in the record suggesting that Ms. Willis worked for approximately 3 hours in March

5   1992.  (*See, e.g.,* Tr. at 342.)

6          There is no dispute that the Commissioner's records have no entry of wages paid to Ms. Willis

7   in 1991.  (Tr. at 95 (showing 19 quarters of coverage for preceding 40 quarter period commencing

8   with third quarter 1999).)  The absence of an entry of wages in Ms. Willis' CER for 1991 thus

9   provides "presumptive evidence" that no wages were paid in that year.  42 U.S.C. § 405(c)(4)(B);

10  *Singer v. Weinberger*, 513 F.2d 176, 178 (9th Cir. 1975).   The presumption can be rebutted by

11  oral and documentary evidence, and the presumption itself may constitute substantial evidence that no

12  wages were paid.  *Singer*, 513 F.2d at 178; *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir.

13  1974).[6]  The sole evidence before the ALJ of the proffered additional quarter of coverage consisted

14  of Ms. Willis' testimony and medical reports from doctors, which appear to be based on her

15  statements to them.  (Tr. at 46-48, 52-53, 324-363)   The ALJ did not find Ms. Willis entirely

16  credible, and the Court may not substitute its judgment for that of the Commissioner.  *Matney*, 981

17  F.2d at 1019.  Thus, this Court can conclude that substantial evidence supported the ALJ's finding

18  that the DLI was September 30, 1999.

19         In the instant motion, in an effort to demonstrate that the ALJ erred in this finding, Mr. Willis

20  now submits a declaration that includes California Tax Form No. 3525, alleging Ms. Willis earned

21  $1,250.95 in income in 1991.  (Willis Declaration in Support of Summary Judgment at ¶¶ 2-3, Ex. A.)

22  Matters not raised at the administrative level and not part of the certified record on review are

23  generally not to be considered in an action to review the denial of disability benefits.  42 U.S.C. §

24  405(g).  While this Court could remand the case for consideration of evidence that was not in the

25  record below, such a procedure would be appropriate where "a claimant presents [new] evidence that

26  is material to determining disability, and there is good cause for the failure to produce the evidence

27  _____

28         [6] The standard to which evidence must be presented in order to rebut the presumption is not definitive
    in the Ninth Circuit.  In the *Singer* case, the court suggested, albeit in *dicta*, that the ALJ must "consider the
    evidence carefully ... and ... weigh that evidence against the statutory presumption."  *Singer*, 513 F.2d at 178.

**United States District Court**

For the Northern District of California

1   earlier." *Wainwright v. Sec'y of Health & Human Serv's.*, 939 F.2d 680, 683 (9th Cir. 1991)

2   (citing *Embrey v. Bowen*, 849 F. 2d 418, 423 (9th Cir. 1988)); 42 U.S.C. § 405(g).  That is not the

3   situation here.

4          The Willis' tax return for the year 1991 was available to Ms. Willis at the time of the ALJ's

5   hearing and is not new evidence.  Furthermore, Mr. Willis makes no showing of good cause for failing

6   to include the return in the administrative record below.  *Wainwright*, 939 F.2d at 683 (stating that

7   where the new evidence was unavailable earlier, good cause is shown).  Moreover, it is questionable

8   whether the tax returns would be material, as the other evidence in the record demonstrates that Ms.

9   Willis worked at most three hours in March 1992.  (Tr. at 342.)  Thus, there is still substantial evidence

10   to show that the DLI is September 30, 1999.

11          Therefore, the Court concludes that substantial evidence supports the ALJ's findings that Ms.

12   Willis' DLI was September 30, 1999, that her disability insured status expired on that date, and that

13   the ALJ's decision on that issue is free of legal error.

14          **D.      The ALJ's Determination That Ms. Willis Did Not Establish The Existence Of**
            **A Severe Impairment Is Supported By Substantial Evidence And Free of**
15          **Legal Error.**

16          Mr. Willis also argues that the ALJ's findings that Ms. Willis did not suffer from a severe

17   impairment is not supported by substantial evidence and free of legal error.  Specifically, Mr. Willis

18   contends: (1) that the medical evidence demonstrates the existence of a severe impairment prior to

19   Willis' DLI; and (2) that the ALJ's failure to call a medical expert to determine the onset date of a

20   severe impairment after Ms. Willis' DLI was reversible error.  The Court concludes that the ALJ

21   considered the medical evidence of Ms. Willis' treating physicians and state agency physicians, both

22   prior to and after Ms. Willis's DLI, and substantial evidence supports the ALJ's finding that Ms. Willis

23   was not severely impaired within the meaning of the SSA.  In addition, any error in the ALJ's failure to

24   call a medical expert under SSR 83-20 did not affect the ALJ's ultimate decision and was, therefore,

25   harmless.

26          **1.      The ALJ's Finding That Ms. Willis Did Not Establish The Existence of A**
            **Severe Impairment Is Supported By Substantial Evidence.**
27

28

9

United States District Court

For the Northern District of California

1    The ALJ concluded that Ms. Willis did not suffer from a severe impairment on or before

2    September 30, 1999. (Tr. at 15.)  Regulations promulgated by the SSA established a five-step

3    sequential evaluation to determine if a person is disabled.  20 C.F.R. § 404.1520.  If an ALJ can find

4    that a person is disabled or not disabled at any step, a determination can be made and the ALJ is not

5    required to go on to the next step.  20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ determines

6    whether a claimant is currently performing any significant gainful activity ("SGA").  *Id*.

7    § 404.1520(a)(4)(i).  If the claimant is not engaged in SGA, step two requires the ALJ to determine

8    whether the claimant has a severe medically determinable mental or physical impairment.  *Id*. §

9    404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the claimants] physical or

10   mental ability to do basic work activities."  *Id*. § 404.1520(c).

11   In rendering his decision, the ALJ analyzed Ms. Willis' medical condition by separating all

12   medical evidence into those diagnoses and treatments prior to Ms. Willis' DLI and those after Ms.

13   Willis' DLI.  (Tr. at 13-14.)  In analyzing the medical records and reports that predated the DLI, the

14   ALJ concluded that only one was relevant and that, with respect to the rest, Ms. Willis had performed

15   SGA for several years after the last date reflected in those reports.  (Tr. at 14, referring to exhibits 1F,

16   2F, parts of 3F, 16F, and 17F).  With respect to the medical records that he deemed to be relevant,

17   the portions of Exhibit 3F that predate September 30, 1999, the ALJ concluded there was insufficient

18   evidence to establish the existence of a severe impairment.  (Tr. at 14.)  Accordingly, at step two of

19   the disability evaluation, the ALJ found that Willis did not establish the existence of a severe

20   impairment prior to her DLI, *i.e.* she had not established an impairment that significantly limited her

21   physical or mental ability to do basic work activities.  (Tr. at 15.)

22   Mr. Willis contends that Dr. Olness' opinion on September 8, 2000, retrospectively

23   determined that Ms. Willis was disabled as of September 1, 1999, due to depression, anxiety, and

24   hypertension.  (Tr. at 249.)  Further, on October 3, 2001, Dr. Olness stated that her condition was

25   permanent.  (Tr. at 364.)  Additionally, Mr. Willis submits that on September 24, 2001, Dr. Kirk

26   opined that Ms. Willis' impairments were severely limiting, and as such, she was disabled and could

27   not work.  (Tr. at 366.)  The ALJ reviewed and considered these medical assessments of Ms. Willis'

28   physicians as well as those of state agency physicians.  (Tr. at 13-14.)  On two separate occasions,

1   state agency physicians and state psychiatrists reviewed Ms. Willis' medical records. (Tr. at 55-56,

2   228.) In both instances, the examiners determined that there was insufficient evidence to establish a

3   disability through Ms. Willis' September 30, 1999, DLI. *Id*.

4       An ALJ has discretion to reject the opinion of a physician for the conflicting opinion of another

5   doctor based on substantial evidence, but to do so, he or she must set "out a detailed summary of the

6   facts and conflicting clinical evidence, [and] state his [or her] interpretation thereof." *Magallanes v.*

7   *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ may also reasonably reject retrospective

8   medical opinions. *Johnson v. Shalala*, 60 F.3d 1428, 1432-1433 (9th Cir. 1995) (concluding that

9   because a physician's retrospective assessment included no specific assessment of claimant's functional

10  capacity prior to that date, the ALJ's rejection of his testimony was reasonable); *Vincent on Behalf of*

11  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (emphasizing that an ALJ's rejection of

12  expert testimony was reasonable because "[a]fter-the-fact psychiatric diagnoses are notoriously

13  unreliable"). As the ALJ noted, both Dr. Olness and Dr. Kirk did not begin treating Ms. Willis until

14  after her DLI. (Tr. at 13.) Dr. Olness became Ms. Willis' physician in November 1999, and Dr. Kirk

15  listed his first date of evaluation as June 29, 2000; both dates are well after Ms. Willis' DLI. (Tr. at

16  13, 221.) Therefore, the ALJ's rejection of Dr. Olness and Dr. Kirk's retrospective medical opinions

17  is free of legal error and based on substantial evidence.

18      Further, the record here demonstrates that the ALJ discussed and considered *all* of the

19  evidence that reflect Ms. Willis' medical history *before and after* her DLI. (Tr. at 13-14.) Mr. Willis

20  does not clearly articulate what medical evidence in the record dated before September 30, 1999,

21  would negate the ALJ's findings of no substantial impairment. Having reviewed the record, the Court

22  concludes that there is substantial evidence to support the ALJ's finding that no severe impairment

23  existed before the DLI of September 30, 1999, and that the finding was free of legal error. *Derosiers,*

24  846 F.2d at 576.

25

26      **2.      The ALJ's Error In Failing to Follow SSR 83-20 When Determining that Willis Did Not Establish A Severe Impairment Is Harmless.**

27      To be eligible for disability insurance benefits based upon a retrospective diagnosis, a claimant

28  must show that "his disability existed prior to the expiration of his insured status." *Flaten v. Secretary*

United States District Court
For the Northern District of California

11

**United States District Court**
For the Northern District of California

1   *of Health & Human Services.*, 44 F.3d 1453, 1461 n.4 (9th Cir. 1995) (quoting *Cruz Rivera v.*

2   *Sec'y of Health & Human Serv's.*, 818 F.2d 96, 97 (1st Cir. 1986)) and noting that "[t]he Ninth

3   Circuit has followed this approach in a long line of cases").

4          At the end of his decision, the ALJ stated that "[i]t may well be . . . that there is evidence to

5   establish a severe impairment or impairments, but that evidence is found in the records and reports

6   which post date the date last insured." (Tr. at 15.)  The ALJ did not, however, call a medical expert

7   to determine the onset date of any such impairment, as required by Social Security Ruling 83-20

8   (1983), to see if the disability arose before Ms. Willis' insured status expired.  Mr. Willis contends that

9   this constitutes reversible error.

10         In interpreting SSR 83-20, the Ninth Circuit has held that where medical inferences regarding

11  the onset date of a disability need to be made, the ALJ must call upon a medical expert to obtain

12  medical evidence regarding the onset date before a determination is made.  *Armstrong v. Comm'r of*

13  *the Social Sec. Admin.*, 160 F. 3d 587, 590 (9th Cir. 1998)*.*  The rationale for this mandate is that

14  certain disabilities (particularly mental impairments), although diagnosed at one date, in fact may have

15  an earlier onset date.  *Qualres v. Barnhart*, 178 F.Supp. 2d 1089, 1096-1097 (N.D. Cal. 2001).

16         In both *Armstrong* and *Quarles*, the respective ALJ's made suggestive statements regarding

17  the onset date of a disability that may have arose after the claimants' DLI, and subsequently, never

18  called a medical expert to determine the onset dates of those disabilities.  *Armstrong*, 160 F.3d at

19  590; *Quarles* 178 F.Supp. 2d at 1095-1098.  SSR 83-20 does impose a duty on the ALJ to develop

20  the record on this matter.  Even so, the claimant still has the ultimate burden to prove disability before

21  the expiration of disability insured status.  *Armstrong*, 160 F. Supp. 2d at 590.

22         Ms. Willis attested that she became unable to work because of her disabling condition on

23  September 30, 1999.  Because Ms. Willis' disability insured status expired on September 30, 1999,

24  the ALJ could properly find that she was not eligible for disability benefits because she was engaged in

25  SGA either up to or beyond her DLI.[7]  *See Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996)

26  (*citing Matthews v. Shalala*, 10 F.3d 679, 681 (9th Cir. 1995) (stating that in order to be eligible for

27

28         [7]     The evidence that she worked beyond the DLI and until August 31, 2000, stems from forms for
    California Disability benefits included with records from Dr. Olness.  (Tr. at 246.) That application refers to her
    flower shop and in her claim to the Commissioner she claimed she worked at the shop "most of September 1999."

**United States District Court**

For the Northern District of California

1    disability benefits, a claimant must prove not only the existence of an impairment, "but that the

2    impairment prevents him from doing his past work"). The first step of the disability determination

3    requires that a claimant not be engaging in any SGA. 20 C.F.R. §404.1520(a)(4)(i). Here, there is

4    substantial evidence in the record to support the ALJ's finding that Ms. Willis performed SGA through

5    her DLI. (Tr. at 90, 110-115.) In addition, the ALJ found that Ms. Willis was not entirely credible.

6    Therefore, the Court concludes that the ALJ's failure to call a medical expert to determine the onset

7    date of potential disabilities disclosed in records that postdated the DLI amounted to harmless error.

8    *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (stating that an error that

9    does not affect the ultimate conclusion is immaterial and harmless).

10
                                    **III.  CONCLUSION**
11

12        For the foregoing reasons, the Court GRANTS Mr. Willis' motion for substitution, DENIES

13   Mr. Willis' motion for summary judgment, and GRANTS the Commissioner's cross-motion for

14   summary judgment.

15   //

16   //

17   //

18

19

20

21

22

23

24

25

26

27

28

13

A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated:  May 9, 2005                                      /s/ Jeffrey S. White
                                                                   JEFFREY S. WHITE
                                                                   UNITED STATES DISTRICT JUDGE

**United States District Court**

For the Northern District of California

14